IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-114-D

| | | |
|---|---|---|
| TIMOTHY SOLUM, and <br> ANGELA SOLUM, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | **ORDER** |
| CERTAINTEED CORPORATION, | ) <br> ) | |
| Defendant. | ) | |

On April 22, 2015, Timothy and Angela Solum ("plaintiffs" or "Solums") sued CertainTeed Corporation ("CertainTeed" or "defendant") in Onslow County Superior Court. Compl. [D.E. 1-1]. Plaintiffs claim that CertainTeed's description of certain construction contractors on its website as "Master Craftsmen" violates the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq., and constitutes fraud under North Carolina law. See Compl. ¶¶ 43–56. On May 21, 2015, CertainTeed removed the action to this court [D.E. 1] and moved to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 5]. See [D.E. 6, 7]; Fed. R. Civ. P. 12(b)(6). Thereafter, plaintiffs responded in opposition [D.E. 12], and CertainTeed replied [D.E. 14]. As explained below, the court grants CertainTeed's motion to dismiss.

I.

CertainTeed manufactures building materials, including vinyl siding. Compl. ¶ 6. CertainTeed also maintains a website, where it offers a search tool that allows customers to search for contractors in their area, thereby facilitating the connection between potential customers and builders. Id. ¶¶ 10–11. CertainTeed list contractors on its website after the contractor completes

training courses on the proper installation of CertainTeed products, including vinyl siding, trim, fencing, and decking. See id. ¶¶ 17–21, 23. After successfully completing certain courses, contractors receive a personalized certificate and are listed on CertainTeed's website under the designation of "Master Craftsman." Id. ¶ 23.

Consumers can search the listed professionals on CertainTeed's website by name or by the product in which they are certified. Id. ¶ 10. To view their search results, consumers must "Accept" the search tool's "Terms and Conditions," which state, among other conditions, the following:

> Although we take certain steps to examine the credentials of our listed service professionals, CertainTeed makes no guarantees or representations regarding the skills or representations of such service professional or the quality of the job that he or she may perform for you if you elect to retain their services. CertainTeed does not endorse or recommend the services of any particular service professional.

Mot. to Dismiss Ex. 1 [D.E. 7-1] 3.[1]

In early 2014, the Solums considered various contractors to install new vinyl siding on their home. Compl. ¶ 25. As a part of their search, they contacted a building contractor called Superior Home Improvement. Id. ¶ 26. The owner of Superior Home Improvement, Donald Follett, visited the plaintiffs' home to provide a consultation and price quote, and he "strongly recommended CertainTeed's product." Id. ¶¶ 27–28. Follett told the plaintiffs that he was a certified Master Craftsman for vinyl siding and that they could verify his credential on CertainTeed's website. Id. ¶¶ 28–29.

Plaintiffs initially were not going to hire Superior Home Improvement for the installation, but, after "access[ing] Defendant CertainTeed's website to investigate its Master Craftsman

---

[1] The "Terms and Conditions" appear as a "clickwrap" agreement—a "dialogue box that appears on a web page and requires the user to agree to certain terms before allowing the user to proceed." Nacco Materials Handling Grp. v. Lilly Co., 4:11-CV-28-D, 2011 WL 2119097, at *1 n.1 (E.D.N.C. May 25, 2011) (unpublished).

2

certification program" and "verif[ying] Superior Home Improvement's qualifications and Master Craftsman certification," they decided to hire Superior Home Improvement. Id. ¶¶ 30–35. Plaintiffs allege that "CertainTeed's website identifies Superior Home Improvement as a 'Vinyl Siding and Polymer Shakes Master Craftsman since 11/2/2007'" and that they relied on this certification when they hired Superior Home Improvement. Id. ¶¶ 33–34.

Superior Home Improvement purchased CertainTeed vinyl siding for use on plaintiffs' home, but Superior Home Improvement failed to properly install the product. Id. ¶¶ 37, 39. Thus, plaintiffs had to hire a second contractor to fix the siding on their home, incurring additional costs. Id. ¶¶ 39–40.

According to the complaint, CertainTeed represents that it "examines the credentials of the service professionals . . . it endorses," id. ¶ 13, that "Master Craftsmen Successfully complete a program course to become certified," id. ¶ 16, and that "only advanced building professionals who demonstrate a high level of knowledge and ability to install CertainTeed building products earn this Master Craftsman status." Id. ¶ 8. Plaintiffs allege that CertainTeed "purposely misleads consumers into believing that the Master Craftsman certification is more prestigious than in actuality," id. ¶ 15, and that CertainTeed does not examine the credentials of service professionals that it lists as Master Craftsmen "in any meaningful manner." Id. ¶ 14. Instead, a Master Craftsman need only read a downloadable hundred-page workbook and pass a twenty-five-question, ninety-minute multiple-choice quiz. Id. ¶¶ 18–19. CertainTeed offers other, similarly straightforward, Master-Craftsman courses for its other products. Id. ¶¶ 17–21. The courses are so simple that, "since discovering that . . . [the] Master Craftsman certification was a sham, Plaintiffs—who are not professional builders and have no actual knowledge about installing CertainTeed product—together became CertainTeed Master Craftsman [sic] in Vinyl Siding and Polymer Shakes, CertaWrap™

3

Weather Resistant Barrier, Restoration Millwork® Trim, EverNew® Vinyl Decking & Railing, and CertainTeedSelects™ Fence." Id. ¶ 22.

II.

A motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" tests the legal and factual sufficiency of the complaint. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). The court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). The court need not, however, accept as true a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Id.

In considering a motion to dismiss, a court may look to documents attached to the complaint and the motion to dismiss if those documents are integral to the complaint and authentic. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). Likewise, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Caper Corp. v. Wells Fargo Bank, N.A., 578 F. App'x 276, 276 n.1 (4th Cir 2014) (per curiam) (unpublished); see In re PEC Sols., Inc. Sec. Litig., 418 F.3d 379, 388 n.7 (4th Cir. 2005); Greenhouse v. MCG Capital Corp., 392 F.3d 650, 656–57 (4th Cir. 2004). Permitting a court to examine a document both integral to the complaint

4

and authentic seeks to prevent the situation where "a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." Am. Chiropractic Ass'n, 367 F.3d at 234. Thus, in analyzing CertainTeed's motion to dismiss, this court may consider the web pages in Exhibit 1 of CertainTeed's motion that contain the statements that plaintiffs challenge. See, e.g., Tessler v. NBC Universal, Inc., No. 2:08cv234, 2009 WL 866834, at *3 (E.D. Va. Mar. 31 2009) (unpublished), aff'd, 364 F. App'x 5 (4th Cir. 2010) (per curiam) (unpublished); Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 405 F. Supp. 2d 680, 684 n.9 (E.D. Va. 2005), aff'd, 227 F. App'x 239 (4th Cir. 2007) (unpublished).

In opposition to this conclusion concerning Exhibit 1, plaintiffs argue that the documents on CertainTeed's website at Exhibit 1 "are undated, unauthenticated, and contain multiple levels of hearsay." Pl.'s Opp'n [D.E. 12] 7. Plaintiffs, however, conflate the requirement that the documents be "authentic" with the evidentiary doctrine of authentication. At the motion to dismiss stage, documents attached to a motion to dismiss need not be accompanied by a formal declaration authenticating them. See, e.g., McDowell v. Norfolk S. Corp., No: 2:06-CV-38D, 2007 WL 2815743, at *3 (E.D.N.C. Jan. 27, 2007), aff'd, 228 F. App'x 369 (4th Cir. 2007) (per curiam) (unpublished). Moreover, simply asserting that CertainTeed's website material "is unreliable because it can be changed" does not suffice. See Tessler, 2009 WL 866834, at *4.

Here, the court finds that CertainTeed's website materials referenced in the complaint and attached to CertainTeed's motion to dismiss in Exhibit 1 are authentic. As for plaintiffs's hearsay objection concerning Exhibit 1, the court is examining Exhibit 1 to determine what representations—or misrepresentations—were made to the plaintiffs, not as evidence that the representations were truthful. Thus, the court overrules plaintiffs' hearsay objection.

5

Plaintiffs allege that they examined Superior Home Improvement's Master-Craftsman certification on CertainTeed's website and that they relied upon the statement that Superior Home Improvement was a "Vinyl Siding and polymer Shakes Master Craftsman since 11/2/2007." Compl. ¶¶ 30–34. Accordingly, plaintiffs specifically refer to CertainTeed's website in their complaint, and the portions of the website that plaintiffs necessarily accessed and viewed while "verif[ying] Superior Home Improvement's qualifications" are integral to the complaint because they constitute the representations on which the plaintiffs allegedly relied.

Exhibit 1 of CertainTeed's motion to dismiss contains screen shots of CertainTeed's home page, the "Find A Pro" locator tool, the clickwrap agreement that plaintiffs necessarily accepted so as to view their search results, the "Terms and Conditions" in the clickwrap agreement, and the page containing Superior Home Improvement's credentials. Thus, each page within Exhibit 1 represents a web page that plaintiffs necessarily viewed while verifying Superior Home Improvement's Master-Craftsman designation. In fact, the Solums do not allege that they relied upon any misrepresentations outside CertainTeed's website; therefore, the entire basis of the plaintiffs' UDTPA and fraud claims rest upon statements that CertainTeed made on its web page. Hence, the images in Exhibit 1 are referenced in and integral to the complaint. Plaintiffs do not allege that the content of Exhibit 1 differs from the content of CertainTeed's website when they accessed it. See Pl.'s Opp'n 7. Accordingly, the court may consider Exhibit 1 of CertainTeed's motion to dismiss as evidence of the representations that were made to the plaintiffs. See, e.g., Tellabs, Inc., 551 U.S. at 322; Caper Corp., 578 F. App'x at 276 n.1; Am. Chiropractic Ass'n, 367 F.3d at 234.

Plaintiffs also challenge Exhibit 2, which CertainTeed attached to its motion to dismiss. Exhibit 2 contains screenshots of web pages containing information about how to become a Master Craftsman. The court, however, need not address whether Exhibit 2 is integral to plaintiffs'

6

complaint. Here, plaintiffs accessed the web pages in Exhibit 2 after discovering that the "certification was a sham." Compl. ¶ 22. Because plaintiffs viewed these statements after hiring Superior Home Improvement, they did not rely upon Exhibit 2 in their hiring decision. Accordingly, the court need not and does not rely on Exhibit 2 in considering CertainTeed's motion to dismiss.

III.

A federal court sitting in diversity applies the substantive law of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496–97 (1941). Thus, the court applies North Carolina law, and the court must determine how the Supreme Court of North Carolina would rule. See, e.g., Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). "If the Supreme Court of [North Carolina] has spoken neither directly nor indirectly on the particular issue before us, [this court is] called upon to predict how that court would rule if presented with the issue." Id. (quotation omitted). In making that prediction, the court may consider opinions of the North Carolina Court of Appeals, treatises, and the practices of other states. Id. In applying North Carolina law, the court must attempt to predict what the Supreme Court of North Carolina would do if it "were faced with this [case]." Teague v. Bakker, 35 F.3d 978, 991 (4th Cir. 1994). If the Supreme Court of North Carolina has not addressed the issue, this court may consider cases from the North Carolina Court of Appeals, treatises, and the practices of other states. See, e.g., Twin City Fire Ins. Co., 433 F.3d at 369.

To state a UDTPA claim under North Carolina law, the plaintiffs must plausibly allege that (1) CertainTeed committed an unfair or deceptive act or practice, (2) the act or practice was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. See N.C. Gen. Stat. §§ 75-1.1, 75-16; Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); Dalton

7

v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); RD & J Props. v. Lauralea-Dilton Enters., LLC, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (2004). An act is deceptive if it has a tendency or capacity to deceive. Dalton, 353 N.C. at 656, 548 S.E.2d at 711; Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). An act is unfair "when it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable assertion of . . . power or position." Carcano v. JBSS, LLC, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009) (quotation and emphasis omitted). "Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court." Kelly v. Georgia-Pacific, LLC, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009) (collecting cases); see Tucker v. Boulevard at Piper Glen LLC, 150 N.C. App. 150, 153, 564 S.E.2d 248, 250 (2002); Eastover Ridge, L.L.C. v. Metric Constructors, Inc., 139 N.C. App. 360, 363, 533 S.E.2d 827, 830 (2000).

When the alleged UDTPA violation is a misrepresentation, a plaintiff must prove detrimental reliance on the alleged misrepresentation to satisfy the proximate cause requirement. See, e.g., Caper Corp., 578 F. App'x at 287; Bumpers, 367 N.C. at 88, 747 S.E.2d at 226. Thus, the Solums must prove both "(1) actual reliance and (2) reasonable reliance." Bumpers, 367 N.C. at 89, 747 S.E.2d at 227. As for what a plaintiff must plead to withstand a motion to dismiss for failure to state a claim, a plaintiff must plausibly allege actual reliance and reasonable reliance. See, e.g., Caper Corp., 578 F. App'x at 287.

Under North Carolina law, reliance upon a representation is reasonable only when the recipient of the representation "use[s] reasonable care to ascertain the truth of that representation." Caper Corp., 578 F. App'x at 281, 287 (discussing reasonable reliance concerning both a fraud and a UDTPA claim). At the pleading stage, when a plaintiff "could have discovered the truth about the misrepresentation upon inquiry," a plaintiff must "allege that it was denied the opportunity to

investigate or could not have learned the true facts by exercise of reasonable diligence." Id. (quotation, alteration, and emphasis omitted); see, e.g., Oberlin Capital v. Slavin, 147 N.C. App. 52, 59, 554 S.E.2d 840, 846 (2001); Hudson-Cole Dev. Corp. v. Beemer, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999).

Under North Carolina law, reliance is unreasonable as a matter of law where a plaintiff relies upon a representation "directly contrary" to the express terms of a written contract. Caper Corp. v. Wells Fargo Bank, N.A., No. 7:12-CV-357, 2013 WL 4504450, at *6–7 (E.D.N.C. Aug. 22, 2013) (unpublished), aff'd, 578 F. App'x 276 (4th Cir. 2014) (per curiam) (unpublished); Int'l Harvester Credit Corp. v. Bowman, 69 N.C. App. 217, 219–220, 316 S.E.2d 619, 621 (1984) (collecting cases); see Davis v. Davis, 256 N.C. 468, 471–73, 124 S.E.2d 130, 133–34 (1962); Isley v. Brown, 253 N.C. 791, 793–94, 117 S.E.2d 821, 823–24 (1961); Eastway Wrecker Serv., Inc. v. City of Charlotte, 165 N.C. App. 639, 645–46, 599 S.E.2d 410, 414 (2004), aff'd, 360 N.C. 167, 622 S.E.2d 495 (2005); Allied Pers. of Raleigh, Inc. v. Alford, 25 N.C. App. 27, 30–31, 212 S.E.2d 46, 48–49 (1975); see also Am. Chiropractic, 367 F.3d at 234–35; Foremost Guar. Corp. v. Meritor Sav. Bank, 910 F.2d 118, 125–26 (4th Cir. 1990); SunTrust Mortg. Inc. v. Busby, 651 F. Supp. 2d 472, 484–87 (W.D.N.C. 2009). This principle comports with the "duty to act with reasonable prudence for [one's] own safety.... One who signs a written contract without reading it, when he can do so understandingly, is bound thereby unless the failure to read is justified by some special circumstance." Davis, 256 N.C. at 471–72, 124 S.E.2d at 133. For example, in Caper Corporation, this court noted, "Caper could have learned the truth about its legal obligation[s] ... by reading the agreements." Caper Corp., 2013 WL 4504450, at *7; cf. Davis, 256 N.C. at 471–72, 124 S.E.2d at 133; Stunzi v. Medlin Motors, Inc., 214 N.C. App. 332, 340–41, 714 S.E.2d 770, 777 (2011) (holding that "one who signs a paper writing is under a duty to ascertain its contents" and "is held

9

to have signed with full knowledge and assent as to what is therein contained").

Likewise, the court predicts that the Supreme Court of North Carolina would hold that, under the UDTPA, a person cannot reasonably rely on mere puffery. Cf. McKee v. James, No. 09CVS3031, 2014 WL 7534078, at *10, 16 (N.C. Super. Ct. Dec. 31, 2014) (unpublished) (holding that mere puffery is not actionable under the UDTPA or as common law fraud). "Puffery is an exaggerated statement which no reasonable buyer would be justified in relying on or a claim of superiority so vague that nothing can be understood from it except that it is an opinion." EndoSurg Med., Inc. v. EndoMaster Med., Inc., 71 F. Supp. 3d 525, 554 (D. Md. 2014) (analyzing reasonable reliance under the Lanham Act); see Pizza Hut, Inc. v. Papa John's Int'l Inc., 227 F.3d 489, 496 (5th Cir. 2000) (same); Imagine Medispa, LLC v. Transformations, Inc., 999 F. Supp. 2d 873, 881 (S.D. W. Va. 2014) (same). General statements of comparison or superiority are puffery and are not actionable as a matter of law. See, e.g., Longman v. Food Lion, Inc., 197 F.3d 675, 685 (4th Cir. 1999) (analyzing reasonable reliance under the Securities Exchange Act of 1934); Nutrition & Fitness, Inc. v. Mark Nutritionals, Inc., 202 F. Supp. 2d 431, 435 (M.D.N.C. 2002) (analyzing reasonable reliance under the Lanham Act).

The Solums claim that they actually relied upon the Master-Craftsman designation and that CertainTeed misrepresented the Master-Craftsman credential as a designation that was "prestigious," Compl. ¶ 15, required rigorous coursework, id. ¶ 17, was available only to providers with "a high level of knowledge and ability," id. ¶ 8, and involved some "examin[ation of] credentials." Id. ¶ 13; see Pl.'s Opp'n 12. Unfortunately for the Solums, under North Carolina law, such reliance is unreasonable as a matter of law.

First, even if CertainTeed's representations concerning the Master-Craftsman designation implied that it was "highly prestigious" or only available after completion of a "rigorous course" and

10

"examination of credentials," these statements are too vague and general to amount to anything more than mere puffery. The statement that a credential is "prestigious" or that a course is "rigorous" expresses nothing more than a general opinion, and thus cannot reasonably be relied upon. See, e.g., Pizza Hut, Inc., 227 F.3d at 496; Longman, 197 F.3d at 685; EndoSurg Med., Inc., 71 F. Supp. 3d at 554; Imagine Medispa, LLC, 999 F. Supp. 2d at 881; Nutrition & Fitness, Inc., 202 F. Supp. 2d at 435; McKee, 2014 WL 7534078, at *10, 16. Similarly, if CertainTeed represented that it had "examined credentials" of individuals listed on its website, without more specificity, this statement contains no meaningful substance upon which a reasonable person could rely. After all, "examination of credentials" might be nothing more than noting that the individual had passed an online quiz.

Second, the Solums' reliance on the alleged misrepresentation of the Master-Craftsman designation was unreasonable as a matter of law because they could have determined the truth—that "CertainTeed makes no guarantees or representations regarding the skills or representations of such service professional or the quality of the job that he or she may perform for you" and that "CertainTeed does not endorse or recommend the services of any particular service professional"—simply by reading the clickwrap statement before clicking "I Agree" and viewing the search results. See Ex. 1 [D.E. 7-1] 3; Caper Corp., 2013 WL 4504450, at *7 ("Caper could have learned the truth about its legal obligation[s] . . . by reading the agreements.") In fact, accepting the plaintiffs' allegations as true, they not only were capable of reading the notice in the clickwrap agreement, but they actually did read it. After all, one of the misrepresentations that they allegedly relied upon—that CertainTeed "examine[s] the credentials" of those given the designation of Master Craftsman—is in the clickwrap agreement. See Ex. 1 [D.E. 7-1] 3. Indeed, in the same sentence in the clickwrap agreement, CertainTeed states that it "makes no . . . representations of . . . the quality

11

of the job that [a service professional listed on its website] may perform for you." Id.

Additionally, with minimal research, plaintiffs could have discovered the Master-Craftsman course requirements on CertainTeed's website.[2] Thus, the Solums could have learned the truth about what the Master-Craftsman designation meant through the exercise of reasonable diligence, either by reading the clickwrap agreement or by researching the Master-Craftsman designation on CertainTeed's website. Furthermore, the Solums have not (and cannot) allege that they were denied the opportunity to investigate or could not have learned the true facts by reasonable diligence. Accordingly, the Solums have not plausibly alleged that they reasonably relied on the Master-Craftsman designation and their UDTPA claim fails.

As for the Solums' contention that creating the Master-Craftsman program is unfair or deceptive because CertainTeed hoped to increase its profits, the claim fails. See Pl.'s Opp'n 12. Simply put, a profit motive is not unfair or deceptive under the UDTPA. Additionally, CertainTeed's continued representation to other customers that Superior Home Improvement is a qualified installer of vinyl siding did not cause plaintiffs' injury and thus cannot form the basis of either their UDTPA or fraud claim. See id.

As for plaintiffs' fraud claim, fraud claims are subject to a heightened pleading requirement. See Fed. R. Civ. P. 9(b). Specifically, plaintiffs "must state with particularity the circumstances constituting fraud." Id. Thus, under Rule 9(b), a party must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what they obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quotation omitted); see McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551,

---

[2] Tellingly, before commencing this action, the plaintiffs did their research, completed the course requirements, and themselves became "Master Craftsm[e]n." Compl. ¶ 22.

12

559–60 (4th Cir. 2013); United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 455–61 (4th Cir. 2013); Adkins v. Crown Auto, Inc., 488 F.3d 225, 231–32 (4th Cir. 2007); Dunn v. Borta, 369 F.3d 421, 426–34 (4th Cir. 2004); United States ex rel. Harrison v. Westinghouse Savannah River Co., 352 F.3d 908, 921–22 (4th Cir. 2003).

To state a claim of fraud under North Carolina law, a plaintiff must sufficiently allege "(1) [a] false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party," where "any reliance on the allegedly false representations must be reasonable." Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007); see Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17, 418 S.E.2d 648, 658, 661 (1992). Whether a plaintiff reasonably relied on the defendant's representations is ordinarily a question for the jury "unless the facts are so clear as to permit only one conclusion." Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP, 350 N.C. 214, 224–25, 513 S.E.2d 320, 327 (1999) (emphasis and quotation omitted).

As explained, the Solums' reliance upon the alleged misrepresentation of the Master-Craftsman designation was unreasonable as a matter of law. Thus, plaintiffs' fraud claim fails.

IV.

In sum, plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, the court GRANTS CertainTeed's motion to dismiss [D.E. 5] and DISMISSES the complaint.

SO ORDERED. This 27 day of October 2015.

JAMES C. DEVER III
Chief United States District Judge